UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| **JULIE MARIE NEVILLE**<br>4205 Navajo Trail<br>Jamestown, OH 45335<br><br>          Plaintiff,<br><br>     vs.<br><br>**EQUIFAX INFORMATION SERVICES, LLC**<br>C/o Corporation Service Company<br>50 W. Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>AND<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.**<br>C/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>AND<br><br>**UNIVERSAL 1 CREDIT UNION**<br>C/o Loren A. Rush, Registered Agent<br>One River Park Drive, Box 467<br>Dayton, OH 45409<br><br>          Defendants. | CASE NO.<br><br>JUDGE<br><br>MAGISTRATE<br><br>**COMPLAINT FOR DAMAGES**<br>**(Jury Demand Requested)** |

Plaintiff Julie Neville ("Plaintiff" or "Neville"), through Counsel, and for Complaint against Defendant Experian Information Services, LLC ("Equifax"), Defendant Experian Information Solutions, Inc. ("Experian"), and Defendant Universal 1 Credit Union ("Universal") (collectively "Defendants") hereby states as follows:

**INTRODUCTION**

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3. In addition to the protections of the the FCRA like many other consumers in the last decade, Neville experienced financial difficulties and made the decision to seek relief by filing for Chapter 13 under Title 11 of the United States Code to seek relief on her secured debts, like the debt owed to Universal and seeking a discharge of her other unsecured debts after completing her Chapter 13 repayment plan.

4. Neville successfully completed her Chapter 13 Plan, received her discharge, and almost three years later was forced to improperly deal with the actions of Universal in furnishing information regarding the discharge debt which Equifax, Experian, and Universal 1 intentionally or negligently refused to remove after Neville exercised her rights under the FCRA to send a credit dispute.

5. Neville brings this action against Universal for reporting a discharged debt on Neville's Experian and Equifax credit report which violated not only her discharge order but has caused significant credit damage.

6. Neville brings this action against Defendant Equifax for its failure to investigate Neville's specific disputes as to Universal's traceline which directly caused damage to Neville's credit score and multiple denials of credit.

7. Neville brings this action against Defendant Experian for its failure to investigate Neville's specific disputes as to Universal's traceline which directly caused damage to Neville's credit score and multiple denials of credit.

8. Equifax failed "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as statutorily mandated pursuant to 15 U.S.C. §1681e(b).

9. Experian failed "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as statutorily mandated pursuant to 15 U.S.C. §1681e(b).

10. Universal failed to comply with its duties under 15 U.S.C. § 1681s-2(a)(1)(A) and/or (a)(1)(B) as Universal furnished information regarding Neville's loan that it knew, or should have known, was inaccurate given her Chapter 13 Discharge.

3

11. Equifax failed to comply with its duties under 15 U.S.C. §1681i(a)(1), which requires that credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

12. Experian failed to comply with its duties under 15 U.S.C. §1681i(a)(1), which requires that credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

## PARTIES, JURISDICTION, AND VENUE

13. Plaintiff Julie Neville is a natural person residing in the City of Jamestown, County of Greene, State of Ohio. Neville is a "consumer" as that term is defined by 15 U.S.C. 1681a(c).

14. Defendant Equifax Information Services, LLC regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Ohio.

15. Defendant Experian Information Solutions, Inc. regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business in Ohio.

16. Defendant Universal 1 Credit Union is a federally chartered credit union and not for profit corporation incorporated under the laws of the State of Ohio and headquartered in Dayton, Ohio.

17. Unless otherwise indicated the use of names of Universal, Equifax, and Experian, in this Complaint includes all agents, employees, officers, members, directors, heirs, successors,

assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

18. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 et seq.; 11 U.S.C. 101, *et seq.*, and 28 U.S.C. §1331.

19. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. §1367.

20. Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## FACTUAL BACKGROUND

21. Sometime prior to August 20, 2013 Neville obtained a secured auto loan with Universal.

22. On August 20, 2013 Neville, along with her co-Debtor John Wayne Neville, Jr. filed a petition for Bankruptcy relief under Chapter 13 of Title 11 of the United States Code in Case No. 3:13-bk-33430 in the United States Bankruptcy Court for the Southern District of Ohio Western Division at Dayton (the "Bankruptcy"). *See* **Exhibit 1** - Bankruptcy Docket

23. Neville listed her liability to Universal on Schedule D of her Chapter 13 Petition. *See* **Exhibit 2** at p. 6

24. Neville along with her co-Debtor completed all necessary payments of their Chapter 13 Plan which included all payments to Universal under the Plan and received their discharge on October 12, 2017. *See* **Exhibit 3**.

25. Universal received a copy of the Bankruptcy Discharge on October 14, 2017 via electronic means through the Bankruptcy Noticing Center. *Id.* at p. 4

5

26. Following discharge Neville slowly began rebuilding her financial life and took out several small lines of credit.

27. On November 16, 2020 Neville applied for an automobile loan with PNC and was declined. *See* **Exhibit 4** at pp. 3

28. In reviewing the declination Neville was surprised that one of the reasons was "serious delinquency". *Id.*

29. Neville also applied for a loan with Universal on November 16, 2020 and was rejected based on her Chapter 13 discharge. *Id.* at pp. 4-5.

30. Shortly after being denied the credit with PNC and Universal on November 18, 2020 Neville received notice that her Comenity Capital Credit Card credit limit had been reduced from $3,300.00 to $750.00. *Id.* at pp. 1-2.

31. In reviewing Comenity's denial, Neville was upset to see that the decrease was based on (1) delinquent or derogatory status and (2) balances on personal installment accounts too high compared to loan amounts. *Id.* at p. 1

32. After receiving each of the denials in Exhibit 3, Neville went online and discovered that Universal was reporting the discharged debt as an unsecured line of credit on her Equifax and Experian Credit Reports as late as October 31, 2020. *See* **Exhibit 5**.

33. On December 10, 2020 Neville immediately sent a written Notice of Dispute to Equifax pursuant to 15 U.S.C. § 1681i(a)(2) in which Neville disputed the reported information on Universal's tradeline. A copy of Neville's dispute letter is attached as **Exhibit 6**.

34. Equifax received Neville's dispute letter on December 15, 2020. *See* **Exhibit 8** at pp. 2-4

6

35. Exhibit 6 was a letter, certified, return receipt, to Equifax which requested the information in Universal's tradeline be deleted because of Neville's discharge. *See* Exhibit 6 at p. 1. Specifically the dispute stated that:

> The consumer unsecured debt account held by Universal 1 has been reported as of October 31, 2020 and continuing since then as (1) an active debt with a closed account; (2) with an account balance of $1,579.00; (3) as well as noted as "charged off account".
>
> I ask that you initiate an Automated Credit Dispute Validation with Creditor Universal 1 Credit Union as this debt was discharged in Chapter 13 Bankruptcy Case No. 13-bk-33430 filed in the United States Bankruptcy Court for the Southern District of Ohio, Western Division at Dayton. *A copy of the Discharge Order showing service to Universal One Credit Union is attached to this dispute*. After receiving this dispute I ask that you delete this tradeline from my report in its entirety.

36. Upon receiving Exhibit 6, Equifax was required to conduct an investigation into this specific account on Neville's credit report pursuant to 15 U.S.C. § 1681i.

37. Upon receiving Exhibit 6, Equifax was required to notify Universal as a furnisher of the disputed reporting information alleged in Paragraph 36 based on Equifax's mandated statutory duty pursuant to 15 U.S.C. § 1681i.

38. To date Neville has never received a response from Equifax regarding Exhibit 6.

39. On December 10, 2020 Neville also immediately sent a written Notice of Dispute to Experian pursuant to 15 U.S.C. § 1681i(a)(2) in which Neville disputed the reported information on Universal's tradeline. A copy of Neville's dispute letter is attached as **Exhibit 7**

40. Exhibit 7 was a letter, certified, return receipt, to Experian which requested the information in Universal's tradeline be deleted because of Neville's discharge. *See* Exhibit 7 at p. 1. Specifically the dispute stated that:

> The consumer unsecured debt account held by Universal 1 has been reported as of October 31, 2020 and continuing since then as (1) an active debt with a closed

account; (2) with an account balance of $1,579.00; (3) as well as noted as "charged off account".

I ask that you initiate an Automated Credit Dispute Validation with Creditor Universal 1 Credit Union as this debt was discharged in Chapter 13 Bankruptcy Case No. 13-bk-33430 filed in the United States Bankruptcy Court for the Southern District of Ohio, Western Division at Dayton. *A copy of the Discharge Order showing service to Universal One Credit Union is attached to this dispute*. After receiving this dispute I ask that you delete this tradeline from my report in its entirety.

41. Upon receiving Exhibit 7, Experian was required to conduct an investigation into this specific account on Neville's credit report pursuant to 15 U.S.C. § 1681i.

42. Upon receiving Exhibit 7, Experian was required to notify Universal as a furnisher of the disputed reporting information alleged in Paragraph 40 based on Experian's mandated statutory duty pursuant to 15 U.S.C. § 1681i.

43. On or about December 30, 2020 Experian sent a response to Neville which purported to be its substantive response to Exhibit 7. *See* Exhibit 8 - Experian Response

44. In its response Experian, despite having actual notice of Neville's Bankruptcy and her Discharge of the liability to Universal furnished the following derogatory information on the Universal tradeline:

   a. Term: 84 months

   b. Credit Limit: $30,670.00

   c. Negative payment history as Charge Off monthly for August 2016, September 2016, October 2016, November 2016, December 2016, January 2017, February 2017, March 2017, April 2017, May 2017, July 2017, August 2017 and September 2017.

*See* Exhibit 8 at p. 2

45. The continued misreporting of a discharged debt by Universal, Experian and Equifax for all times relevant herein have caused Neville to suffer actual economic damages including but not limited to:

   a. Credit damage in the form of fluctuating credit scores based on the reporting by Universal, Experian, and Equifax from at least October 31, 2020 if not early which has caused Neville's credit score to drop and delay the rehabilitation of her credit since her Chapter 13 Discharge;

   b. Two denials of automobile loan applications in November 2019 of $15,000.00; and

   c. A reduction of her credit limit on one credit card from $3,300.00 to $750.00

46. The continued misreporting of a discharged debt by Universal, Equifax and Experian has caused Neville to suffer actual non-economic damages in addition to the damages listed in Paragraph 45 in the form of frustration, anxiety and fear in being unable to obtain more credit as her credit score is incorrect and the daily frustration, stress and anxiety that her bankruptcy discharge has no effect as to her obligations to Universal.

## COUNT ONE
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT - UNIVERSAL
## 15 U.S.C. § 1681, *et seq.*

47. Neville restates the allegations contained in Paragraphs 1 through 46 as if fully restated herein.

48. Based on the allegations herein, *supra*, Universal knowingly began furnishing incorrect information on its tradeline with Equifax and Experian pursuant to 15 U.S.C. § 1681s-2(a)(1)(A) as late as October 31, 2020 following the discharge of the debt in the Bankruptcy and continuing until this day on that Discover is furnishing information on the Tradeline that:

9

  a. On Neville's Equifax report, inaccurately reports the charge off account despite the Chapter 13 Discharge. *See* Exhibit 5

  b. On both of her Equifax and Experian reports, inaccurately reports the account balance as $1,579.00 despite the Chapter 13 Discharge. *See* Exhibit 5

  c. On her Experian updated report as of December 30, 2020, inaccurately reports the terms of the loan despite the Chapter 13 Discharge. *See* **Exhibit 9** at p. 2

  d. On her Experian updated report as of December 30, 2020, inaccurately reports the Credit Amount despite the Chapter 13 Discharge. *Id.*

  e. On her Experian updated report as of December 30, 2020, inaccurately reports charge off months for August 2016, September 2016, October 2016, November 2016, December 2016, January 2017, February 2017, March 2017, April 2017, May 2017, July 2017, August 2017 and September 2017 despite the Chapter 13 Discharge. *See* Exhibit 9 at p. 2.

49. The materially misleading information summarized above and demonstrated by Exhibits 3 through 9 continues to curtail Neville's ability to re-establish her credit following the Bankruptcy as demonstrated by the credit line decrease and declinations of credit referenced in Paragraph 45 above.

50. Based on the allegations above, *supra*, Universal continued to furnish inconsistent information on the Tradeline despite the receipt of Notice of Dispute from Equifax in violation of 11 U.S.C. § 1681s-2(a)(1)(B).

51. Based on the allegations above, *supra*, Universal continued to furnish inconsistent information on the Tradeline despite the receipt of Notice of Dispute from Experian in violation of 11 U.S.C. § 1681s-2(a)(1)(B).

52. Based on the allegations above, *supra*, Universal continued to furnish inconsistent information on the Tradeline despite the receipt of the Bankruptcy Discharge in violation of 11 U.S.C. § 1681s-2(a)(1)(B).

53. The foregoing acts and omissions constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

54. As a result of each and every willful violation of the FCRA committed by Universal with respect to the Tradeline, Plaintiff Julie Neville is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Universal 1 as applicable.

## COUNT TWO: AGAINST EQUIFAX
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT - 15 U.S.C. 1681, *et seq.*

55. Neville restates all allegations contained in Paragraphs 1 through 46 as if fully restated herein.

56. As stated above, *supra*, Neville discovered on or about November 18, 2020 that her Equifax Credit Report had material inconsistencies with the tradeline furnished by Universal.

57. Based on these discoveries in her Equifax Credit Report and the denial letters, Neville sent a dispute to Equifax on December 10, 2020 to formally dispute the Tradeline as inconsistent with the terms of her Bankruptcy discharge. *See* Exhibit 6.

58. Exhibit 6 was a written Notice of Dispute to Equifax pursuant to 15 U.S.C. § 1681i(a)(2).

59. Upon receiving Exhibit 6, Equifax was required to conduct an investigation into Universal's Tradeline on Plaintiff's credit report pursuant to 15 U.S.C. § 1681i.

60. Upon receiving Exhibit 6, Equifax was required to notify Universal of the inaccurate information contained in the Tradeline based on Equifax's mandated statutory duty pursuant to 15 U.S.C. § 1681i.

61. As demonstrated through the allegations in this Complaint, Equifax failed to notify Universal regarding Neville's dispute pursuant to 15 U.S.C. § 1681(a)(2) as Equifax never responded to Exhibit 6 and Universal's inaccurate reporting continues.

62. Equifax's continued incomplete and inaccurate reporting of Plaintiff's credit history as demonstrated above, in light of its knowledge of the actual errors and omissions was willful. Plaintiff Julie Neville is eligible for statutory and punitive damages.

63. The foregoing acts and omissions constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

64. As a result of each and every willful violation of the FCRA, Plaintiff Julie Neville is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $7.35 as well as costs, statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Equifax.

65. As a result of each and every negligent noncompliance of the FCRA, Plaintiff Julie Neville is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $7.35; and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Equifax.

## COUNT THREE: AGAINST EXPERIAN
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT - 15 U.S.C. 1681, *et seq.*

66. Neville restates all allegations contained in Paragraphs 1 through 46 as if fully restated herein.

67. As stated above, *supra*, Neville discovered on or about November 18, 2020 that her Experian Credit Report had material inconsistencies with the tradeline furnished by Universal.

68. Based on these discoveries in her Experian Credit Report and the denial letters, Neville sent a dispute to Equifax on December 10, 2020 to formally dispute the Tradeline as inconsistent with the terms of her Bankruptcy discharge. *See* Exhibit 7.

69. Exhibit 7 was a written Notice of Dispute to Experian pursuant to 15 U.S.C. § 1681i(a)(2).

70. Upon receiving Exhibit 7, Experian was required to conduct an investigation into Universal's Tradeline on Plaintiff's credit report pursuant to 15 U.S.C. § 1681i.

71. Based on Exhibit 9, Experian failed to notify Universal regarding Neville's dispute pursuant to 15 U.S.C. § 1681(a)(2) as it appears the Tradeline still contains derogatory reporting inaccuracies including loan origination information and charge off information despite receipt of the Bankruptcy information including her discharge. *See* Exhibits 7 and 9.

72. Experian's continued incomplete and inaccurate reporting of Plaintiff's credit history as demonstrated above, in light of its knowledge of the actual errors and omissions was willful. Plaintiff Julie Neville is eligible for statutory and punitive damages.

73. The foregoing acts and omissions constitute willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

74. As a result of each and every willful violation of the FCRA, Plaintiff Julie Neville is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $7.35 as well as costs, statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Experian.

75. As a result of each and every negligent noncompliance of the FCRA, Plaintiff Julie Neville is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1) of at least $7.35; and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Experian.

### COUNT FOUR: AGAINST UNIVERSAL, EQUIFAX AND EXPERIAN
#### Intrusion Upon Seclusion

76. Neville realleges and incorporates all of the allegations contained in Paragraphs 1 through 75 as if fully contained herein.

77. Based on the allegations above since October 31, 2020, if not earlier, Universal, Equifax and Experian have intentionally interfered with the solitude, seclusion or private concerns or affairs of Neville. Specifically Universal, Equifax and Experian armed with actual knowledge of Neville's Bankruptcy filing and discharge intentionally provided inaccurate information on her Equifax Credit Report and Experian Credit Report that the parties knew was both inaccurate and would proximately harm Neville's credit score and ability to rehabilitate her credit.

78. As demonstrated by Exhibits 6 through 9 Universal upon receipt of the credit disputes from Equifax and Experian had an additional responsibility to report the tradeline as accurate given their prior actual knowledge of the Bankruptcy Discharge.

79. Any reasonable investigation by Universal, Equifax, and Experian would have led to the tradeline being deleted or suppressed.

80. The reporting by Universal, Equifax and Experian respectively are intrusions into Ms. Neville's affairs that occurred in such a way that would be highly offensive to a reasonable person when reviewing their credit reports and lead a reasonable person to believe that Universal, Equifax and/or Experian were willfully ignoring Neville's bankruptcy discharge.

81. The actions of Universal, Equifax and Experian described above are a direct intrusion into Neville's personal affairs which proximately caused actual damages outlined in Paragraph 45 above and each Defendant is liable, as applicable, for actual damages in an amount to be determined and for an amount of punitive damages to be determined.

**COUNT FIVE: VIOLATION OF THE DISCHARGE ORDER - UNIVERSAL**
**(11 U.S.C. § 105, 11 U.S.C. § 524 and 11 U.S.C. § 1328)**

82. Neville restates all allegations contained in Paragraphs 1 through 81 as if fully restated herein.

83. 11 U.S.C. § 524(a)(2) states a discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

84. Neville has a private cause of action under 11 U.S.C. §524 pursuant to the 6th Circuit's decision in *In re Pertuso* which states while there is no private right of action for violation of the discharge injunction, Debtor may bring civil contempt charges against a party they allege has violated the injunction, and if contempt is established, they may be awarded damages as a sanction for that contempt pursuant to this Court's authority under 11 U.S.C. § 105. *See Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 421-23 (6th Cir. 2000); *see also Chambers v. Greenpoint Credit (In re Chambers),* 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005).

85. As stated above Neville received her discharge on August 20, 2013. *See* Exhibit 1 and Exhibit 3.

86. Universal received a copy of the Bankruptcy Discharge on October 14, 2017 via electronic means through the Bankruptcy Noticing Center. *Id.* at p. 4

87. Based upon the discharge and Universal's own reporting of the debt, there is no dispute this debt was discharged in Neville's Chapter 13. *See* Exhibits 2, 3 and 4.

88. Based upon the allegations above and clearly demonstrated by Exhibits 4 through 9, Universal despite actual knowledge of the Bankruptcy Discharge knowingly furnished derogatory credit information over three years after Neville's discharge on her Equifax Credit Report and Experian Credit Report. *See* Exhibits 4, 6, 7, and 9.

89. The acts of Universal described herein demonstrate a willful pattern of overt acts that violate the discharge order obtained by Neville which must be stopped.

90. As a result of the above violation(s) of the discharge, Neville is entitled to recover against Universal an award of actual damages, punitive damages in an amount to be determined by this Court, and legal fees and expenses pursuant to 11 U.S.C. 105.

**PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Julie Neville respectfully requests that this Court enter an order granting Judgment against Defendant Universal 1 Credit Union, Defendant Equifax Information Services, LLC, and Defendant Experian Information Solutions, Inc. (collectively "Defendants") as follows:

    A. For actual damages in a total amount to be proven at trial but of at least $15,000.00 as well as costs against Defendant Universal for all of the allegations contained in Count One and/or Count Five;

      B.      For actual damages in a total amount to be proven at trial but of at least $7.35 as well as costs against Defendant Equifax for all of the allegations contained in Count Two;

      C.      For actual damages in a total amount to be proven at trial but of at least $7.35 as well as costs against Defendant Experian for all of the allegations contained in Count Three;

      D.      For Statutory Damages against Defendants Universal, Equifax and Experian as applicable pursuant to 15 U.S.C. 1681n(a)(1) for the allegations contained in Count One, Two, and Three as to each specific Defendant;

      E.      For an award of punitive damages as the Court may award against Defendant Universal, Equifax, and Experian as applicable pursuant to 15 U.S.C. 1681n(a)(2) for the allegations contained in Count One, Two, and Three as to each specific Defendant;

      F.      For an award of punitive damages as the Court may award against Defendants Universal, Equifax and/or Experian as applicable for the allegations contained in Count Four;

      G.      For an award of punitive damages as the Court may award against Defendant Universal as applicable for the allegations contained in Count Five;

      H.      For an award of Plaintiff's reasonable costs of litigation and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant Universal, Equifax, and Experian as applicable for each incident of negligent noncompliance of the FCRA for the allegations contained in Count One, Two and Three as to each specific Defendant; and

      I.      For an award of Plaintiff's reasonable costs of litigation and attorney's fees pursuant to 11 U.S.C. 105 against Defendant Universal as to the allegations contained in Count Five; and

      J.      For all other relief this Court may deem just and proper.

Respectfully submitted,

*/s/Brian D. Flick*
Brian D. Flick (0081605)
Marc E. Dann (0039425)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

*Counsel for Plaintiff Julie Neville*

## JURY DEMAND

Plaintiff Julie Neville hereby respectfully demands a trial by jury on all such claims that may be so tried.

*/s/Brian D. Flick*
Brian D. Flick (0081605)
Marc E. Dann (0039425)
Dann Law

*Counsel for Plaintiff Julie Neville*